# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
FLOR, POND, and STEELE
Appellant Military Judges

**UNITED STATES, Appellee**
v.
**Captain LAMARIO D. THOMAS**
**United States Army, Appellant**

ARMY 20240080

Headquarters, Fort Bragg
Tyler J. Heimann and Gregory B. Batdorff, Military Judges
Colonel Joseph B. Mackey, Staff Judge Advocate

For Appellant: Frank J. Spinner, Esquire (on brief and reply brief).

For Appellee: Colonel Richard E. Gorini, JA; Major Elizabeth G. Van Dyck, JA; Captain Meghan E. Moore, JA (on brief).

8 July 2026

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

STEELE, Judge:

An officer panel convicted appellant, contrary to his pleas, of one specification of sexual assault, two specifications of sexual assault of a child, and one specification of conduct unbecoming an officer and a gentleman, in violation of Articles 120, 120b, and 133, Uniform Code of Military Justice, 10 U.S.C. §§ 920, 920b, and 933 (2016) [UCMJ]. The panel sentenced appellant to a dismissal, twenty years of confinement, total forfeitures, and a reprimand.

On appeal, appellant raises three assignments of error, two of which warrant discussion but no relief. Appellant argues that: (1) the Army lost jurisdiction to try him by operation of law based upon his mandatory removal date; and (2) the

evidence is legally and factually insufficient to support his conviction of conduct unbecoming an officer for committing a sexual act upon the victim while acting in a parental role over her.[1] For the reasons set forth below, we disagree and conclude the Army maintained jurisdiction to try appellant and the evidence to support his convictions is legally and factually sufficient.

## BACKGROUND

Between 5 July 2018 and 21 December 2021, appellant was investigated by local authorities and the Army's Criminal Investigation Division for sexual assault of a child and sexual assault. After appellant was twice non-selected for promotion to major, on 30 June 2022, he was notified by the U.S. Army Human Resources Command (HRC) that consequently he would be mandatorily removed from the Army, by either separation or retirement, with a mandatory removal date (MRD) of 31 December 2022. Appellant, having served nearly twenty-six-and-a-half years on active duty, elected to retire and received retirement orders, dated 27 October 2022, with an effective retirement/separation date of 31 December 2022. On 22 December 2022, after the conclusion of the four-plus year investigation and his sexual battery conviction in the North Carolina court system, court-martial charges were preferred against appellant. On 11 January 2023, appellant was informed by his commander that his retirement orders were revoked, and he received a copy of his revocation orders which were dated 10 January 2023. Appellant was arraigned upon the preferred charges on 23 February 2023.

## LAW AND DISCUSSION

### A. Jurisdiction

### 1. Additional Background

After arraignment, appellant's defense counsel filed a motion to dismiss all charges due to a lack of jurisdiction. The defense asserted appellant's retirement orders were not properly revoked prior to becoming effective, were not revoked by the proper authority, and he was not recalled to active duty. The government opposed the motion asserting appellant never received delivery of a final discharge certificate (Department of Defense (DD) Form 214) which was not located in his Interactive Personnel Electronics Records Management System (iPERMS) or the Transition Processing System (TRANSPROC) database; never received a final

---

[1] Appellant raised an additional assignment of error, alleging his other convictions are factually insufficient, of which we have given full and fair consideration and find to be without merit. We have also given full and fair consideration to the matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and determine they warrant neither discussion nor relief.

accounting of pay; never completed the clearing process; and preferral of appellant's court-martial charges automatically suspended all favorable actions, including appellant's retirement.

During the Article 39(a) motions, Mr. ██, who worked in the Out-Processing Section of the installation's Military Personnel Division (MPD) testified appellant never received a preclearance stamp or completed an out-processing packet to clear the installation, and that his supervisor, Ms. ██, instructed him to not clear appellant because he was flagged. Ms. ██, a supervisor in the out-processing section, testified the office was unable to complete DD Form 214s or issue orders from 23 December 2022 through 10 January 2023 due to a transitional "brownout" period when legacy Army human resources and pay systems were taken offline so that data could be transferred into the new Integrated Personnel and Pay System - Army.[2] She further testified that appellant's unit S-1 personnel office informed her that appellant was being court-martialed, after which she revoked his retirement orders on 10 January 2023. Because of this, appellant, who had not finalized his DD Form 214 prior to the end of December 2022, did not receive a final DD Form 214.

Regarding final pay, Mr. ██, who also worked in the MPD out-processing section, testified that an MRD stopped all pay at the MRD date even if a soldier was not being out-processed or discharged. He further testified that, in appellant's case, any discharge would not be effective unless a completed DD Form 2656, establishing appellant's retirement pay account,[3] was on file and uploaded to the Defense Finance and Accounting Service. He stated this would be the case even if the MPD had finalized the DD Form 214 without the soldier's signature, for instance, if the soldier was unavailable or refused to sign. Mr. ██ then testified his supervisor, Ms. ██ processed the revocation of appellant's retirement when he was on leave and appellant did not have a final DD Form 214.

Appellant testified that Ms. ██ informed him that no matter what appellant did, he would be separated on 31 December 2022. Appellant testified further that he

---

[2] During this period, S1 (Personnel) shops and Human Resource professionals working in MPD, could not process transactions (i.e. separations, assignments, and updates to records) in the legacy programs (i.e. Electronic Military Personnel Office (eMILPO)) while data was converted.

[3] The DD Form 2656 is a mandatory document retiring U.S. military members use to establish their retired pay accounts. It records direct deposit instructions, federal tax withholdings, beneficiary designations, and Survivor Benefit Plan elections.

had a retiree ID card[4] and was reassigned to retiree Tricare yet acknowledged that he knew he needed to clear the installation, that his Commander informed him that his retirement orders were revoked, and that he did not have a final DD Form 214 nor a final accounting of pay.

Mr. ███ who worked at the installation's Military Pay Office, testified he revoked appellant's retirement processing and cancelled his separation transaction in the pay system after receiving the revocation orders on 12 January 2023. He then stated appellant never received a final accounting of pay because his separation was cancelled, but he did receive all of his December 2022, and January 2023 pay at the end of January 2023. He then stated that he never received appellant's DD Form 214 or separation orders—only his revocation orders. The Deputy Director of the Military Pay Office, Mr. ███, also verified that appellant did not receive a final accounting of pay.

The military judge ultimately denied the defense's motion, concluding that the preferral of charges automatically acted to suspend all favorable actions to include any discharge and/or retirement, that appellant did not complete the necessary steps to validly effectuate a retirement from the military, and that personal and subject matter jurisdiction over appellant existed for the offenses in the court-martial.

### 2. Standard of Review

Jurisdiction is a question of law that this court reviews de novo. *United States v. Hennis*, 79 M.J. 370, 375 (C.A.A.F. 2020) (citing *United States v. Hale*, 78 M.J. 268, 270 (C.A.A.F. 2019), cert. denied, 587 U.S. 1040 (2019)), cert. denied 141 S. Ct. 1052 (2021). This court accepts the military judge's findings of fact unless they are "clearly erroneous or unsupported in the record." *United States v. Hart*, 66 M.J. 273, 276 (C.A.A.F. 2008) (quoting *United States v. Melanson*, 53 M.J. 1, 2 (C.A.A.F. 2000)).

### 3. Law

Court-martial jurisdiction to try a servicemember hinges upon their status as a member of the regular component of the Armed Forces in accordance with Article 2, UCMJ, which falls within the term "land and naval Forces" pursuant to Art. I, § 8, cl. 14, of the Constitution. *Solorio v. United States*, 483 U.S. 435, 438–439 (1987). As our superior court has long held, "[i]t is black letter law that *in personam* jurisdiction over a military person is lost upon his discharge from the service, absent s[o]me saving circumstance or statutory authorization." *Hart*, 66 M.J. at 275

---

[4] Ms. ███, the out-processing section supervisor, was under the impression appellant did not separate from the military properly and was "stumped" that he had a military retiree ID card since he needed a final DD Form 214 to get it.

4

(quoting *United States v. Howard*, 20 M.J. 353, 354 (C.M.A. 1985)); *see also United States v. Christensen*, 78 M.J. 1, 4 (C.A.A.F. 2018).

In one of the seminal cases regarding jurisdiction, *Smith v. Vanderbush*, 47 M.J. 56 (C.A.A.F. 1997), court-martial charges had been preferred and referred, and the accused was arraigned. However, during the pending proceedings, authorized personnel officials administratively separated the accused at his expiration of term of service (ETS). *Id.* at 58. Because the command failed to execute a regulatory "flagging" action to suspend the discharge, and no other statutory or regulatory provisions prevented separation, the Court of Appeals for the Armed Forces [CAAF] held that court-martial jurisdiction does not survive an otherwise valid administrative discharge issued prior to the adjudication of findings and sentence. *Id.* at 56–58.

Absent valid discharge, however, the court-martial maintains jurisdiction over servicemembers pending court-martial. As the CAAF stated in *Smith*, "members of the armed forces do not have an unconditional right to be discharged upon their ETS. The authority to retain servicemembers past their period of obligated service for purposes of trial by court-martial is a longstanding feature of military law." 47 M.J. at 57-58; *accord In re Grimley*, 137 U.S. 147 (1890), *and* W. Winthrop, *Military Law and Precedents* 90 (2d ed. 1920 Reprint). This principle is reflected in Article 2(a)(1) of the UCMJ, which provides for jurisdiction over servicemembers "awaiting discharge after expiration of their terms of enlistment." However, the court noted that because the authority to hold a servicemember past their ETS is "discretionary and not self-executing," the government can act within a reasonable time to continue the servicemember's retention to maintain jurisdiction. *Smith*, 47 M.J. at 58 (citing Rule for Courts-Martial, *Manual for Courts-Martial, United States* (1995 ed.), 202(c)(1) discussion).[5]

Since the UCMJ does not include criteria by which a servicemember is officially discharged from the armed forces resulting in the loss of court-martial jurisdiction, our superior court has relied upon "10 U.S.C. §§ 1168(a) and 1169 'for *guidance* as to what is required to effectuate discharge.'" *Christensen*, 78 M.J. at 4 (emphasis in original) (quoting *Hart*, 66 M.J. at 275). Relying upon those statutory provisions, CAAF established a three-part test to inform when a servicemember's discharge is legally finalized:

---

[5] "Court-martial jurisdiction exists to try a person as long as that person occupies a status as a person subject to the UCMJ. Articles 103, 103b, and 104a set forth offenses with expanded jurisdictional reach. Thus, a Servicemember is subject to court-martial jurisdiction until lawfully discharged or, when the Servicemember's term of service has expired, the government fails to act within a reasonable time on objection by the Servicemember to continued retention." Rule for Courts-Martial, *Manual for Courts-Martial, United States* (2019 ed), 202(c)(1) discussion.

(1) <u>Delivery.</u>  Delivery of a valid discharge certificate (i.e., a DD Form 214);

(2) <u>Final Pay.</u>  A final accounting of pay made to the member; and,

(3) <u>Clearing.</u>  Completion of the clearing process required by service regulations to separate the member from military service.

*Id.* (quoting *Hart*, 66 M.J. at 276-79).

This three-part test serves as a guide rather than an absolute requirement and will not be applied if it conflicts with reason or policy.  *Id.* (quoting *United States v. Nettles*, 74 M.J. 289, 291 (C.A.A.F. 2015)).  Although derived from statutes for enlisted personnel, courts have consistently applied this tripartite framework to both officers and enlisted members.  *See, e.g., United States v. Vance*, ARMY 20180011, 2020 CCA LEXIS 112, at *20 (Army Ct. Crim. App. 8 Apr. 2020) (mem. op.) (applying *Christensen* framework to an officer-appellant).

Applicable at the time of trial, Army regulations governing officer separations stated in part that "[a]n officer pending court-martial charges or investigation with a view toward court-martial will not be separated without Headquarters, Department of the Army (HQDA) approval."  Army Reg. 600-8-24, Officer Transfers and Discharges, para. 1-18, (8 February 2020) [AR 600-8-24].  Additionally, Army Reg. 27-10. Military Justice, para, 5-22*b*. (20 November 2020) [AR 27-10], provides that after charges are preferred, the charge sheet (DD Form 458):

> will automatically act to suspend all favorable personnel actions, including discharge, promotion, and reenlistment, and will automatically serve as a basis for extending a Soldier's term of service, if required. . . .  After preferral of a charge, regardless of any action purporting to discharge or separate a Soldier, any issuance of a discharge certificate is void and the Soldier's term of service will be extended, if required, until final disposition of the charge(s), including completion of appellate review.

In short, any discharge certificate issued after charges have been preferred are void, and the soldier is retained by regulation until final disposition of the court-martial charges.

*4. Discussion*

On appeal, appellant argues the Army lost jurisdiction to try him by operation of law based upon his mandatory removal date of 31 December 2022.[6] We disagree.

As an active-duty Army officer pending separation via retirement, Article 2, UCMJ, applied to appellant who was awaiting a discharge that had not been finalized. The evidence in the record clearly support the following:

(1) Appellant did not receive delivery of a valid discharge certificate (DD Form 214). Specifically:

> (a) before appellant's effective retirement date, charges were preferred against him on a DD Form 458 on 22 December 2022, which under AR 27-10, acted to suspend all favorable actions and automatically served as a basis to extend his term of service, and were subsequently referred to court-martial;

> (b) the installation's MPD office had no ability to complete DD Form 214s or issue orders from 23 December 2022 through 10 January 2023 due to a transitional "brownout" period;

> (c) Human Resources Command revoked appellant's retirement orders on 10 January 2023, a fact his commander informed him of; and,

> (d) there was no final DD Form 214 for appellant in his iPERMS record or the TRANSPROC database.

(2) Appellant did not receive a final accounting of pay. Specifically:

> (a) his retirement processing and separation transaction initiated by the Fort Bragg Army Military Pay Office was revoked in the military pay system on 12 January 2023;

---

[6] Appellant also argues, for the first time on appeal, that his MRD should have been December 2021. This court declines to address this argument and legal theory because it was not raised before the military judge at trial nor contained within the record. It is well established "that a legal theory not presented at trial may not be raised for the first time on appeal absent exigent circumstances." *United States v. Lloyd*, 69 M.J. 95, 101 (C.A.A.F. 2010) (citing *United States v. Bowers*, 3 C.M.A. 615, 619, 14 C.M.R. 33, 37 (1954)).

(b) Defense Finance and Accounting Service personnel never received appellant's DD Form 214 or separation orders but did receive his revocation orders;

(c) as result of the order revocation, appellant received his active duty pay for the month of January on 1 February 2023; and,

(d) the Deputy Director of the Military Pay Office confirmed that appellant did not receive a final accounting of pay.

(3) Appellant did not undergo a "clearing" process as required under appropriate service regulations to separate him from military service. Specifically:

(a) appellant never completed an out-processing packet nor obtained a pre-clearance stamp to clear the installation;

(b) he was not cleared because he was flagged pending court-martial, which in accordance with AR 600-8-24, prohibits his separation without HQDA approval; and,

(c) there was no record of appellant completing the out-processing/ clearing requirements of Fort Bragg.

For these reasons, we hold that the Army did not lose jurisdiction to try appellant for the charged offenses and at all times maintained jurisdiction.

*B. Factual and Legal Sufficiency of Appellant's Conviction of Conduct Unbecoming*

*1. Additional Background*

In the Specification of Charge III, appellant was convicted of conduct unbecoming an officer and a gentleman, in violation of Article 133, UCMJ, for committing a sexual act upon the victim, while acting in a parental role over the victim. The victim was over eighteen years of age during the timeframe of the charged Article 133, UCMJ, offense. The victim was not the biological daughter of appellant. She and her mother moved in with appellant when the victim was five-years-old. Though appellant and the victim's mother never married, they had a son. Although the victim and her younger brother had different fathers, the victim sometimes referred to appellant as "Dad." Furthermore, the appellant, the victim, her mother, and brother moved to North Carolina and lived there while appellant was stationed at Fort Bragg. Around 2011, the victim's mother moved out of the home but thought she would eventually get her two children back. Appellant then met and married another women in 2012. After the victim's mother moved out of the home,

appellant continued to raise the victim and her brother by setting rules, assigning chores, providing them with food, clothes, and housing.

In April 2013, shortly after the victim turned fourteen, appellant sexually assaulted her for the first time. In the fall of 2013, the appellant served the victim's mother with emergency custody paperwork. In 2014, appellant obtained full custody of the victim. In 2015 when appellant's then wife asked appellant why he was coming out of the victim's room at 0300-0400 in the morning, he told her "I look and check up on my children at night." The victim turned eighteen-years-old in April 2017, after which appellant continued committing sex acts upon her. The victim estimated appellant sexually assaulted her more than 200 times between the time she turned fourteen-years-old and the discovery of the offenses on 5 July 2018.

During trial, defense counsel highlighted appellant's parental role over the victim during her cross-examination when they referred to appellant as "your Dad" when questioning her and then verified in her testimony that appellant "performed . . . like a normal father."

On appeal, appellant argues his conviction for the Article 133, UCMJ, offense in the Specification of Charge III is legally and factually insufficient because the government failed to prove appellant acted in a parental role over the victim, who was not his natural, adopted, or stepdaughter and where appellant's legal custody of her ended when she reached the age of eighteen.[7]

---

[7] At trial, defense moved to dismiss the Specification of Charge III arguing the charged offense was void for vagueness and appellant lacked notice that the sexual activity between the appellant and the victim, while she was an adult, was proscribed. The military judge denied the motion, writing:

> The fact that the [appellant] was not [the victim's] biological father or legally adoptive father does not negate the fact that any reasonable officer would understand, and hence be on notice, that engaging in sexual acts with a person similarly situated as [the victim] in this case would obviously risk bringing dishonor on himself and the military, and run the serious risk of compromising his standing as an officer.

Appellant does not argue that the Specification of Charge III is void for vagueness on appeal.

*2. Standard of Review*

We review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).[8] "The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Gutierrez*, 73 M.J. 172, 175 (C.A.A.F. 2014) (quoting *United States v. Bennitt*, 72 M.J. 266, 268 (C.A.A.F. 2013)).

Factual sufficiency requires us to "weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses." Article 66(c), Uniform Code of Military Justice, 10 U.S.C. § 866(c) (2012). "Such a review involves a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

*3. Law*

Conduct unbecoming an officer and gentleman has two elements: "(1) [t]hat the accused did or omitted to do certain acts; and (2) [t]hat, under the circumstances, these acts or omissions constituted conduct unbecoming an officer and gentleman." *Manual for Courts-Martial, United States* (2016 ed.), pt. IV, ¶ 59.b(1) - (2). "The focus of Article 133, UCMJ, is the effect of the accused's conduct on his status as an officer." *United States v. Diaz*, 69 M.J. 127, 135 (C.A.A.F. 2010) (citing *United States v. Conliffe*, 67 M.J. 127, 132 (C.A.A.F. 2009)). "The test [for Article 133, UCMJ] is whether the conduct has fallen below the standards established for officers." *Conliffe*, 67 M.J. at 132 (alteration in original) (quoting *United States v. Taylor*, 23 M.J. 314, 318 (C.M.A. 1987)).[9] "An officer's conduct need not violate

---

[8] The four specifications for which appellant was found guilty of at trial occurred prior to 1 January 2021, therefore, we review this case under the previous version of Article 66(d), UCMJ. The 2021 amendment to Article 66, UCMJ, altering the court's factual sufficiency responsibilities applies only to cases "in which *every* finding of guilty entered into the record . . . is for an offense that occurred on or after" 1 January 2021, the date of this amendment's enactment. Pub. L. No. 116-283, 134 Stat. 3611-13 (emphasis added); *see also United States v. Scott*, 84 M.J. 583, 584 (Army Ct. Crim. App. 2024).

[9] In describing the nature and examples of the offense, the *Manual for Courts-Martial, United States* (2019 ed.), states, in part:

(continued . . .)

other provisions of the UCMJ or even be otherwise criminal to violate Article 133, UCMJ. The gravamen of the offense is that the officer's conduct disgraces him personally or brings dishonor to the military profession . . . ." *United States v. Schweitzer*, 68 M.J. 133, 137 (C.A.A.F. 2009). This court previously held that an Army officer engaging in sexual activity with his eighteen-year-old adopted daughter constituted conduct unbecoming an officer and a gentleman in violation of Article 133, UCMJ. *United States v. Myer*, ARMY 20160490, 2019 CCA LEXIS 13, at *2, 10 (Army Ct. Crim. App. 10 Jan. 2019) (mem. op.).

### 4. *Discussion*

In the Specification of Charge III, appellant was convicted of conduct unbecoming an officer and a gentleman by committing a sexual act upon the victim while serving in a parental role over her in violation of Article 133, UCMJ. Appellant argues the evidence is factually and legally insufficient to find him guilty because the government did not prove he "acted in a parental role over [the victim]" as alleged in the specification since she was not his natural daughter, adopted daughter, or stepdaughter and although he had legal custody of her as a minor, it ended when the victim reached eighteen-years-old, the age of majority.

Contrary to appellant's arguments, the evidence clearly established that appellant served in a parental role over the victim for well over a decade from the time she was five years of age until she turned eighteen, to include him being awarded permanent custody of her. Appellant provided the victim with a home, food, clothing, established rules, and assigned chores, essentially all things that a parent does for their child. Although appellant was not the victim's biological father or legally adoptive father, she referred to him as "Dad." This parental role

---

(. . .continued)

> (2) *Nature of offense.* Conduct violative of this article is action or behavior in an official capacity which, in dishonoring or disgracing the person as an officer, seriously compromises the officer's character as a gentleman, or action or behavior in an unofficial or private capacity which, in dishonoring or disgracing the officer personally, seriously compromises the person's standing as an officer. . . .

> (3) *Examples of offenses.* Instances of violation of this article include . . . committing or attempting to commit a crime involving moral turpitude . . . .

pt. IV, ¶ 59.c(2) - (3).

did not end when the victim reached the age of majority. Under these facts, appellant's conduct fell below the standards established for officers regardless of whether the victim had reached the age of majority or had in fact consented, and, his actions clearly brought disrepute and dishonor upon appellant and his profession, clearly compromising his standing as an officer. *See, e.g.*, *id.*, 2019 CCA LEXIS 13, at *10.[10]

For these reasons, for the Specification of Charge III, we find the evidence legally and factually sufficient that the appellant served in a parental role over the victim, that he engaged in the sexual conduct charged, and that under the circumstances, his actions constituted conduct unbecoming an officer and gentleman.

## CONCLUSION

The findings of guilty and the sentence are AFFIRMED.

Chief Judge FLOR and Senior Judge POND concur.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court

---

[10] Additionally, although not raised before us, we find appellant was on notice that his actions were proscribed. We concur with the military judge that any reasonable officer would understand, and hence be on notice, that engaging in sexual acts with a person similarly situated as the victim would obviously risk bringing dishonor on himself and the military and run the serious risk of compromising his standing as an officer, regardless of the age of the victim or her ability to consent.